## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

NRT MID-ATLANTIC LLC, d/b/a/
COLDWELL BANKER REALTY,

    *Plaintiff,*

    v.

WILLIAM PEACH, *et al.*,

    *Defendants.*

Civil Action No. 1:25-cv-00899-ELH

## <u>MEMORANDUM OPINION</u>

Plaintiff NRT Mid-Atlantic LLC, d/b/a Coldwell Banker Realty ("Coldwell Banker" or "Coldwell"), filed suit against defendants William Peach, a former Coldwell Banker employee, and PenFed Realty, LLC, d/b/a Berkshire Hathaway HomeServices PenFed Realty ("PenFed"), where Peach now works. ECF 1. Coldwell Banker alleges that PenFed and Peach "coordinated" a "campaign of unfair competition involving PenFed's poaching of Peach, a number of other former Coldwell Banker employees, and numerous real estate agents from Coldwell Banker." *Id.* at 1.

The Complaint asserts three claims: Breach of Contract, lodged against Peach (Count 1); Tortious Interference with Contract and Prospective Economic Advantage, lodged against PenFed (Count 2); and Civil Conspiracy, lodged against both defendants (Count 3). *Id.* at 29, 32, 33. Plaintiff appended three exhibits to its Complaint, pertaining to contracts between Peach and Coldwell Banker: the 2013 "Branch Manager Agreement" (ECF 1-1); the 2021 "Restrictive Covenants Agreement" (ECF 1-2); and the 2022 "Restrictive Covenant Agreement" (ECF 1-3). I shall refer to the agreements collectively as the "Peach Agreements."

Both PenFed and Peach have moved to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. ECF 13 (Coldwell Banker); ECF 17 (Peach). Coldwell Banker opposes the motions (ECF 20), with a supporting memorandum. ECF 20-1. It claims that defendants' "concerns are easily remedied with an amended complaint." *Id.* at 3–4; *see also id.* at 26–27. PenFed and Peach replied. ECF 23; ECF 24. Defendants' motions are pending.

Plaintiff has filed "Coldwell Banker's Motion For Leave To File Amended Complaint", pursuant to Fed. R. Civ. P. 15. ECF 25 ("Motion"). Plaintiff also filed its proposed First Amended Complaint ("FAC"). ECF 25-2; ECF 25-3 (redlined). PenFed opposes plaintiff's Motion. ECF 26 ("Opposition"). Peach did not respond. Plaintiff replied to PenFed's Opposition. ECF 27.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion.

## I.    Factual Background[1]

Both Coldwell Banker and PenFed are real estate brokerage companies. ECF 1 at 4–6. Peach began working for Coldwell Banker in 1992 and later became a Regional Vice President and Branch Manager. *Id.* at 1, 6, 25. He resigned from Coldwell Banker on November 19, 2024, after 32 years of employment, and began working for PenFed. *Id.* at 25–26. According to plaintiff, Peach and PenFed have collaborated in a scheme to compete unfairly against Coldwell Banker. *Id.* at 1–4.

Plaintiff filed suit on March 18, 2025, about four months after Peach left the employment of Coldwell Banker. *Id*. Coldwell alleges that Peach violated three employment and shareholder agreements with Coldwell Banker. *Id.* at 7–25. According to plaintiff, these agreements are restrictive covenants that impose non-competition, non-disclosure, non-solicitation, non-

---

[1]  The factual summary is derived from the allegations in the Complaint.

interference, and non-disparagement obligations on Peach. *Id.* at 7, 11–12, 17–25. Plaintiff claims that Peach's "role and position at PenFed . . . requires him to perform the same or substantially similar duties [as those] he performed at Coldwell Banker," in violation of his contractual obligations. *Id.* at 28, 30–31.

In addition, plaintiff alleges that PenFed "has been hiring Coldwell Banker's employees, despite their restrictive covenants, since approximately January 2022." *Id.* at 26. According to Coldwell Banker, Peach is one of 138 former Coldwell Banker agents who have been successfully recruited by PenFed. *Id.* at 28–29. Specifically, Coldwell Banker claims that "PenFed hired a former Regional Vice President, six Branch Managers, and Peach in late 2024." *Id.* at 30.

Coldwell also alleges that its contractual and business relationship with "real estate agents formerly and currently associated with Coldwell Banker" stems from Independent Contractor Agreements ("ICAs"). *Id.* at 32. Plaintiff claims that PenFed has "misused, and is misusing, the goodwill and relationships fostered by Coldwell Banker between its former managers and its real estate agents[.]" *Id.* at 26. Further, Coldwell alleges that PenFed's actions have caused "losses and/or damages, including but not limited to net lost profits" and irreparable harm, including to plaintiff's "recruitment and retention efforts and momentum, workforce cohesion, morale, and other valuable intangible assets[.]" *Id.* at 31, 33–35.

In its FAC, plaintiff includes additional factual allegations regarding defendants' alleged unfair competition methods. ECF 25-3 at 30–38. Plaintiff has also revised its legal claims. *Id.* at 38–53.

In the factual section of the FAC, Coldwell adds background information about the competitive nature of the real estate business and its relationship with PenFed. *Id.* at 9–10. Plaintiff also adds to its original description of PenFed's alleged "campaign to unfairly compete

with Coldwell Banker" by including several examples of unfair competition practices by managers and agents who have participated in this alleged scheme. *Id*. at 30–34. And, plaintiff supplements the description of misrepresentations allegedly made by Peach's counsel. *Id*. at 35–37. Moreover, plaintiff adds the initials of 91 agents who PenFed "knew" it "had solicited away" from Coldwell Banker. *Id*. at 38. This is information that plaintiff also provided to defendants during discovery. *Id*.[2]

As to the legal claims, plaintiff makes three significant revisions. First, plaintiff adds an additional count against Peach, asserting "Breach of Fiduciary Duty" (FAC Count 2). *Id*. at 43–44. Second, plaintiff has abandoned its civil conspiracy claim against both defendants. ECF 1 at 33–35. Third, plaintiff adds a claim against both defendants for "Unfair Competition" (FAC Count 4). ECF 25-3 at 50–53.

In the FAC, plaintiff does not significantly revise the other two claims that are contained in its Complaint, asserting breach of contract against Peach (FAC Count 1) and tortious interference against PenFed (FAC Count 3). *Id*. at 38–42, 45–50. But, with regard to the breach of contract claim, plaintiff added to its recitation of Maryland contract law the "four requirements . . . for enforcing restrictive covenants[.]" *Id*. at 39 (citing *Allegis Grp., Inc. v. Bero*, 689 F. Supp. 3d 81, 119–20 (D. Md. 2023) (Hollander, J.), *aff'd*, 2025 WL 2141298 (4th Cir. July 29, 2025)). As to its new factual allegations, Coldwell slightly altered its description of the confidential information Peach could access while working for plaintiff. ECF 25-3 at 39–40. Additionally, plaintiff claims that the restrictive covenants in Peach's agreements with Coldwell "do not work an unreasonable hardship on him[.]" *Id*. at 40. Moreover, Coldwell provides the address of the

---

[2] PenFed asserts that it did not consent to proceed with discovery and that plaintiff's discovery requests were "premature." ECF 26 at 9 n.3.

PenFed office where Peach is allegedly based, along with a map to show that this location "is within the 50-mile geographic radius proscribed" in Peach's 2022 Restrictive Covenant Agreement. *Id.* at 41. Coldwell also adds allegations that Peach "has violated" the "confidentiality and non-disclosure provisions of the Peach Agreements, by his misuse and/or misappropriation of Coldwell Banker's confidential information" and that he "used, is using, or will use that information in connection with unfairly competing with Coldwell Banker for the benefit of himself and PenFed." *Id.*

As to plaintiff's claim against PenFed for tortious interference, plaintiff has added citations to Maryland law as well as new facts. *Id.* at 45–50.[3] Coldwell includes the elements of the "two general manifestations" of the tort: tortious interference with contract and tortious interference with prospective economic advantage. *Id.* at 46 (citing *Webb v. Green Tree Servicing, LLC*, ELH-11-2105, 2011 WL 6141464, at *4–7 (D. Md. Dec. 9, 2011)). Plaintiff has revised this claim to include allegations regarding other real estate agents, whose initials were provided during discovery. ECF 25-3 at 47–48. Additionally, plaintiff includes examples of how PenFed's alleged interference has led to "net lost profits", such as losses stemming from "existing listing agreements that were transferred or released to PenFed[.]" *Id.* at 50.

Coldwell Banker has also revised its request for relief. In the Complaint, plaintiff sought preliminary and permanent injunctive relief. ECF 1 at 35. Plaintiff asked the Court to enjoin defendants from tortiously interfering with various contractual obligations between Coldwell and former employees, including Peach. *Id.* Additionally, plaintiff sought an injunction ordering Peach to cease breaching his agreements with Coldwell. *Id.* Coldwell also requested "an order requiring Peach to turn over any Coldwell Banker confidential information" in his possession. *Id.*

---

[3] It is not necessary to include legal authority in a complaint.

Coldwell also sought damages, "costs and expenses, including its reasonable and necessary attorneys' fees", and any "further relief to which it may be entitled." *Id.* In the FAC, Coldwell Banker asks the Court to enjoin "Peach from retaining any property or confidential information (in any form, anywhere) of Coldwell Banker." ECF 25-3 at 54. Coldwell Banker also seeks to enjoin "Defendants from unfairly competing against" plaintiff. *Id.* And, plaintiff expands its request for an injunction to enjoin PenFed from "tortiously interfering with . . . the restrictive covenants and/or employment agreements between Coldwell Banker and its former managers working for PenFed[.]" *Id.*

## II.    Legal Standards

Fed. R. Civ. P. 15(a)(1) provides: "A party may amend its pleading once as a matter of course no later than . . . 21 days after serving it, or . . . if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(2) states: "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."

Under Rule 15(a)(2), "[t]he court should freely give leave [to amend] when justice so requires." It is the Fourth Circuit's "policy to liberally allow amendment in keeping with the spirit of Federal Rule of Civil Procedure 15(a)." *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010) (citing *Coral v. Gonse*, 330 F.2d 997, 998 (4th Cir. 1964)); *see also United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 197 (4th Cir. 2022) ("*MedCom*"); *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

"This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006); *see also MedCom*, 42 F.4th at 197. Therefore, "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Oroweat Foods Co.*, 785 F.2d at 509 (citing *Foman*, 371 U.S. at 182); *see also Davison v. Randall*, 912 F.3d 666, 690 (4th Cir. 2019); *Adbul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 293 (4th Cir. 2018); *Scott v. Family Dollar Stores*, 733 F.3d 105, 121 (4th Cir. 2013) (Wilkinson, J., dissenting); *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 379 (4th Cir. 2012); *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010); *Medigen of Ky., Inc. v. Pub. Serv. Comm'n of W.Va.*, 985 F.2d 164, 168 (4th Cir. 1993).

Ultimately, the decision whether to grant leave to amend falls within the sound discretion of the district court. *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 553 (2010) ("By its terms, Rule 15(a) gives discretion to the district court in deciding whether to grant a motion to amend a pleading to add a party or a claim."); *see also Medigen of Ky., Inc.*, 985 F.2d at 167–68. "Put simply, an abuse of discretion is when the district judge is 'fundamentally wrong.'" *MedCom*, 42 F.4th at 198 (citing *Bluestein v. Cent. Wis. Anesthesiology, S.C.*, 769 F.3d 944, 957 (7th Cir. 2014)). But, "the trial judge 'will not be reversed simply because an appellate court disagrees.'" *MedCom*, 42 F.4th at 197 (quoting Henry J. Friendly, *Indiscretion About Discretion*, 31 Emory L. J. 747, 754 (1982)) (additional citation omitted).

As indicated, leave to amend should be denied if the amendment would be prejudicial, futile, or made in bad faith. These concepts are discussed below.

A pleading is futile "'if the proposed amended [pleading] fails to satisfy the requirements of the federal rules.'" *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) (quoting *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008)) (alterations added). Put another way, "'[f]utility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards'", such as Fed. R. Civ. P. 8, Fed. R. Civ. P. 12(b)(2), and Fed. R. Civ. P. 12(b)(6). *See Davison*, 912 F.3d at 690 (quoting *Katyle*, 637 F.3d at 471).

"Traditionally," the Fourth Circuit has "held that a proposed amendment was 'futile' if it was 'clearly insufficient or frivolous on its face.'" *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021) (quoting *Oroweat Foods Co.*, 785 F.2d at 510). More recently, the Fourth Circuit has "made clear that district courts are free to deny leave to amend as futile if the complaint fails to withstand Rule 12(b)(6) scrutiny." *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d at 750; *see also Daulatzai v. Maryland*, 606 F. Supp. 3d 252, 262 (D. Md. 2022) (recognizing that the Fourth Circuit has "explicitly confirmed" that the district court has authority to deny leave to amend if the proposed amendment would not withstand a Rule 12(b)(6) challenge), *aff'd*, 97 F.4th 166 (4th Cir. 2024).

However, this requirement does not mean that "'every plaintiff seeking leave to amend their claims must demonstrate that his claims can withstand a Rule 12(b)(6) motion.'" *Those Certain Underwriters at Lloyd's, London v. Home Point Fin. Corp.*, RDB-23-405, 2025 WL 2494325, at *9 (D. Md. Aug. 29, 2025) (quoting *Bioiberica Nebraska, Inc. v. Nutramax Mfg., Inc.*, SAG-18-03133, 2019 WL 5102674, at *3 (D. Md. Oct. 10, 2019)). The court in *Bioiberica Nebraska, Inc.* explained, 2019 WL 5102674, at *3: "Such a requirement would render superfluous the Fourth Circuit's definition of a futile claim as one that is '*clearly insufficient or frivolous on*

*its face*,' . . . and would run contrary to the Fourth Circuit's well-established 'policy to liberally allow amendment in keeping with the spirit of Federal Rule of Civil Procedure 15(a)[.]'" (emphasis in original) (cleaned up).

In any event, it is important to note that whether a complaint states a claim for relief, as required by Rule 12(b)(6), is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325–26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513–14 (2002). Fed. R. Civ. P. 8(a)(2) provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . "); *Seabrook v. Driscoll*, 148 F.4th 264, 269 (4th Cir. 2025); *Sysco Mach. Corp. v. DCS USA Corp.*, 143 F.4th 222, 228 (4th Cir. 2025); *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021); *Fauconier v. Clarke*, 966 F.3d 265, 276 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). A plausible claim is more than merely conceivable or speculative. *Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

9

But, a plaintiff need not include "detailed factual allegations" to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam). However, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Instead, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable, and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

As noted, leave to amend should be denied if the amendment would be prejudicial to the opponent. *Oroweat Foods Co.*, 785 F.2d at 509. Under Rule 15(a)(2), "prejudice means that the party opposing the amendment would be hindered in the preparation of its case, or would have been prevented from taking some measure in support of its position." 61A AM. JUR. 2d, Pleading § 664 (May 2025 update). Prejudice to the opposing party is "'often . . . determined by the nature of the amendment and its timing.'" *Adbul-Mumit*, 896 F.3d at 293 (quoting *Laber*, 438 F.3d at 427); *see also Doe v. Mercy High Sch., Inc.*, JJR-23-01184, 2024 WL 4443076, at *3 (D. Md. Oct. 8, 2024) (same). Courts should "look to the 'particular circumstances' presented, including

previous opportunities to amend and the reason for the amendment." *Adbul-Mumit*, 896 F.3d at 293. In general, "'[t]he further the case progressed before judgment was entered, the more likely it is that [subsequent] amendment will prejudice the defendant.'" *Id.* (citation omitted; alterations in *Adbul-Mumit*); *see also Ramnarine v. Rainbow Child Dev. Ctr., Inc.*, RWT-17-2261, 2018 WL 2762564, at *2 (D. Md. June 8, 2018) ("The closer a case progresses toward trial, the more likely the amendment will prejudice the defendant.").

A court may find undue prejudice sufficient to justify denying leave to amend if a new claim or defense would force the non-moving party to "expend significant additional resources to conduct discovery and prepare for trial"; it would "significantly delay the resolution of the dispute"; or it would "prevent the plaintiff from bringing a timely action in another jurisdiction." 61A AM. JUR. 2d, Pleading § 664; *see also Sharkey IRO/IRA v. Franklin Res.*, 263 F.R.D. 298, 301 (D. Md. 2009) (concluding that amendment "may prejudice the non-moving party when the motion would shift the theory of the case, thereby rendering the non-moving party's prior discovery a misdirected use of resources and compelling the non-moving party to engage in costly additional discovery"). The Fourth Circuit explained in *Laber*, 438 F.3d at 427: "A common example of a prejudicial amendment is one that 'raises a new legal theory that would require the gathering and analysis of facts not already considered by the [defendant, and] is offered shortly before or during trial.'" (Citation omitted; alteration in *Laber*).

"An amendment is not prejudicial . . . if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred." *Id.* (citing *Davis v. Piper Aircraft Co.*, 615 F.2d 606, 613 (4th Cir. 1980), *cert. denied*, 448 U.S. 911 (1980)); *see also Ramnarine*, 2018 WL 2762564, at *2. Moreover, "the time, effort, and money . . . expended in litigating [a] case" do not constitute "substantial prejudice." *Nat'l Recovery Agency, Inc. v. AIG*

*Domestic Claims, Inc.*, JAS-05-0033, 2006 WL 1289545, at *3 (M.D. Pa. May 9, 2006); *see also Block v. First Blood Assocs.*, 988 F.2d 344, 351 (2d Cir. 1993) (concluding that the time, effort, and money expended by the plaintiffs in litigating the case did not amount to substantial prejudice).

To be sure, "a court may consider a movant's 'undue delay' or 'dilatory motive' in deciding whether to grant leave to amend under Rule 15(a)." *Krupski*, 560 U.S. at 553 (quoting *Foman*, 371 U.S. at 182). But, "[d]elay alone is an insufficient reason to deny leave to amend." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999); *see also MedCom*, 42 F.4th at 197 ("Delay alone is not enough to deny leave to amend, though it is often evidence that goes to prove bad faith and prejudice."); *Deasy v. Hill*, 833 F.2d 38, 41 (4th Cir. 1987) ("Delay alone, without prejudice, does not support the denial of a motion for leave to amend."); *Davis*, 615 F.2d at 613 ("Delay alone however, without any specifically resulting prejudice, or any obvious design by dilatoriness to harass the opponent, should not suffice as reason for denial."). "Rather, the delay must be accompanied by prejudice, bad faith, or futility." *Edwards*, 178 F.3d at 242; *see also Mayfield*, 674 F.3d at 379 (stating that "a request to amend should only be denied if one of three facts is present: 'the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile.'") (citation omitted); *Franks v. Ross*, 313 F.3d 184, 193 (4th Cir. 2002) ("In fact, such leave 'should be denied *only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'") (citation omitted) (emphasis in *Franks*). And, "[p]rejudice is the weightiest factor, the absence thereof, 'though not alone determinative, will normally warrant granting leave to amend.'" *Oliver v. Dep't of Pub. Safety & Corr. Servs.*, 350 F. Supp. 3d 340, 346 (D. Md. 2018) (quoting *Davis*, 615 F.2d at 613), *aff'd sub nom. Oliver v. Bartholomew*, 785 F.

App'x 166 (4th Cir. 2019) (per curiam); *see V.E. v. Univ. of Maryland Baltimore Cty.*, *Maryland*, JRR-22-02338, 2023 WL 5153650, at *2 (D. Md. Aug. 10, 2023), *aff'd*, 2024 WL 4563857 (4th Cir. Oct. 24, 2024) (per curiam).

The Fourth Circuit has said that it "cannot provide a comprehensive definition of a term like bad faith; in truth, it is a difficult term to define without retreating to circular reasoning or just listing examples." *MedCom*, 42 F.4th at 198. But, it has pointed to Black's Law Dictionary, which defines "bad faith" as "'[d]ishonesty of belief or purpose.'" *Id.* (citation omitted) (alteration in original). The Court added, *id.*: "To act with a dishonesty of purpose is to act for the wrong reasons. It may be outright lying, deceiving, playing unjustifiable hardball, slacking off, intentionally causing confusion, or stubbornly refusing to follow rules—you can imagine cases where a party just wants to cause chaos—or it might be something as mundane as noticing someone's mistake and saying nothing about it." And, "when a party withholds evidence for an extended period, it is not unreasonable for a district court to presume bad faith, at least where no satisfactory explanation is given for the delay." *Id.* at 199.

### III.    Discussion

Suit was filed on March 18, 2025. ECF 1. PenFed moved to dismiss on May 12, 2025. ECF 13. Peach moved to dismiss on May 14, 2025. ECF 17. Plaintiff's combined opposition was filed on June 16, 2025. ECF 20. Replies were filed by defendants on July 10, 2025. ECF 23 (PenFed), ECF 24 (Peach). By August 29, 2025, about five months after suit was filed, Coldwell moved to amend the suit. ECF 25. Yet, PenFed complains that Coldwell unduly delayed seeking leave to amend its Complaint. ECF 26 at 1. According to defendant, Coldwell "adamantly defended its original claims for months," and "forced" defendant to incur unnecessary expense and delay by opposing PenFed's motion to dismiss. *Id.* PenFed adds that Coldwell "could have

13

filed an Amended Complaint as a matter of right addressing the deficiencies in the original Complaint" but, instead, Coldwell opposed defendants' motions. *Id.* at 3.

In my view, the claim of undue delay borders on frivolous. Plaintiff had every right to respond to the motions. The decision to amend the suit is not a concession that defendants would have prevailed on their motions. Nor was defendant "forced" to incur unnecessary expense because of the opposition to a motion that defendant elected to file. *Id.* at 1.

PenFed also rests its Opposition on the ground of futility. *Id.* at 6. In its view, the "additional allegations in the FAC fail to correct the deficiencies" in the Complaint. *Id.* According to PenFed, plaintiff's Motion "should be denied as futile because the FAC fails to state a claim pursuant to Rule 12(b)(6)." *Id.* at 5. The contention that the entire FAC fails to state any claim is specious.

As noted, Rule 8 dictates the pleading standard in federal court, and only requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief. *Twombly*, 550 U.S. at 555–56; *see also Lattinville-Pace v. Intelligent Waves LLC*, 2024 WL 1756167, at *2 (4th Cir. Apr. 24, 2024) (per curiam) (same), *cert. denied*, 145 S. Ct. 274 (2024).

Peach does not contest the Motion. But, in his motion to dismiss he argues, *inter alia*, that the allegations are insufficient to show a breach of the geographical restriction. ECF 17-1 at 5. In particular, he points out that plaintiff "does not state how many miles" separate Peach's current work for PenFed "from where he previously worked." *Id.*; *see also* ECF 24 at 2. In the FAC, plaintiff has addressed this asserted omission, adding that the location for Peach's work for PenFed is "within the 50-mile geographic radius proscribed in Peach's" contract. ECF 25-3 at 41.

According to a map that Coldwell Banker included with the FAC, the total distance between locations is 46.23 miles.  *Id.*

Similarly, PenFed argues in its motion to dismiss that plaintiff's original Complaint is deficient partly because plaintiff "fails to allege at all *how* PenFed interfered with Peach's and the other unspecified 138 real-estate agents' contracts and economic relations."  ECF 13-1 at 5 (emphasis in original).  In addition, PenFed criticizes plaintiff for failing to specify "the who, what, where, when, how, or why" of the "138 real-estate agents' contracts and economic relations it claims PenFed interfered with[.]"  *Id.* at 6.

In the FAC, plaintiff includes the initials of the former Coldwell Banker managers who were allegedly hired by PenFed, despite PenFed's knowledge that these employees were bound by restrictive covenants with plaintiff.  ECF 25-3 at 30 n.68.  Additionally, plaintiff provides the initials of 91 real estate agents it claims PenFed "solicited away from Coldwell Banker."  *Id.* at 38 n.70.  According to plaintiff, PenFed has "interfered with and induced the termination of listing agreements between Coldwell Banker and homesellers by persuading . . . the homeseller to request . . . Coldwell Banker [to]  relinquish its contractual rights under the listing agreement."  *Id.* at 32.  Plaintiff supplements this allegation with a specific anecdote describing this conduct, including the initials of the former Coldwell Banker employees who were involved.  *Id.* at 32–33.

Coldwell asserts that "discovery . . . will undoubtedly reveal more direct and circumstantial evidence of PenFed and the former Coldwell Banker managers' misconduct."  *Id.* at 31–32.  PenFed urges the Court to "ignore" plaintiff's "insistence that discovery will cure any lack of specificity or plausibility of its claims[.]"  ECF 26 at 9 n.4.  PenFed explains that "'[w]hile Rule 8 is a liberal standard, plaintiffs cannot simply promise the court that once they have completed

discovery, something will turn up.'" *Id.* (quoting *Migdal*, 248 F.3d at 328). That is not what plaintiff has done here.

In its FAC, plaintiff includes examples of PenFed's alleged collaboration with former Coldwell Banker employees to support its claims of tortious interference and unfair competition. ECF 25-3 at 30–34. And, discovery will undoubtedly provide more information about these allegations.

Further, PenFed argues that Coldwell Banker's FAC is futile because its revised legal claims against PenFed fail to state a claim. ECF 26 at 6, 10, 12. PenFed asks the Court to deny Coldwell's Motion and also to "grant PenFed's Motion to Dismiss the Complaint, and dismiss all claims against PenFed with prejudice." *Id.* at 12.

In regard to futility, PenFed argues that Coldwell Banker's amended claim in Count 3 for "Tortious Interference With Contract And Prospective Economic Advantage/Business Relations" fails to state a claim. *Id.* at 6; *see* ECF 25-3 at 45. The tort of intentional interference with contractual or business relations is "well established in Maryland." *Macklin v. Robert Logan Assocs.,* 334 Md. 287, 296, 639 A.2d 112, 116 (1994). It "arises only out of the relationships between three parties, the parties to a contract or other economic relationship (P and T) and the interferer (D)." *K & K Mgmt., Inc. v. Lee,* 316 Md. 137, 154, 557 A.2d 965, 973 (1989).

Notably, the tort has "two general manifestations." *Macklin,* 334 Md. at 297, 639 A.2d at 117. The first manifestation is often described as "'inducing the breach of an existing contract,'" and the second, "'more broadly,'" constitutes "'maliciously or wrongfully interfering with economic relationships in the absence of a breach of contract.'" *Blondell v. Littlepage,* 413 Md. 96, 125, 991 A.2d 80, 97 (2010) (citation omitted).

As an initial matter, PenFed asserts that Coldwell improperly combined two distinct torts, which are "'similar', but not the same." ECF 26 at 6 n.2 (citation omitted). In the FAC, Coldwell Banker acknowledges that there are "two general manifestations" of "the tort of intentional interference[.]" ECF 25-3 at 46. Coldwell Banker then lists the separate elements of each manifestation of the tort, and asserts that PenFed has committed both. *Id.* at 45.

Pleading both manifestations of the tort in the same count is not fatal. *See*, *e.g.*, *Rocky Gorge Dev., LLC v. Gab Enters., Inc.*, No. 1501, Sept. Term 2017, 2018 WL 6271662, at *1, *10, *13–14 (Md. Ct. Spec. App. Nov. 30, 2018) (adjudicating an appeal in which the plaintiff sought recovery under both manifestations of tortious interference alleged in one count of "Tortious Interference with Contractual and Economic Relations"); *see also Goode v. Am. Veterans, Inc.*, 874 F. Supp. 2d 430, 446–48 (D. Md. 2012) (dismissing claim for "Tortious Interference with Business, Economic, and Contractual Relations" brought under a single count because the factual allegations were "anemic", *not* because the different theories of the tort were pled together).

In *Macklin,* 334 Md. at 298, 639 A.2d at 117, the Maryland Court of Appeals[4] explained: "While the two manifestations of the tort share an underlying rationale, *i.e.,* 'under certain circumstances, a party is liable if he interferes with and damages another in his business or occupation,' they differ in their tolerance of interference." (Citation omitted). Under the first scenario, "where a contract between two parties exists, the circumstances in which a third party

_____

[4] In the general election held in Maryland in November 2022, the voters of Maryland approved a constitutional amendment to change the name of the Maryland Court of Appeals to the Supreme Court of Maryland. And, the voters also approved a change in the name of the State's intermediate appellate court, from the Maryland Court of Special Appeals to the Appellate Court of Maryland. These changes went into effect on December 14, 2022. *See* Press Release, Maryland Courts, *Voter-approved constitutional change renames high courts to Supreme and Appellate Court of Maryland* (Dec. 14, 2022), https://perma.cc/TL89-QFKR. I shall refer to the courts by the names that were in effect when the cited decisions were issued.

has a right to interfere with the performance of that contract are more narrowly restricted." *Natural Design, Inc. v. Rouse Co.,* 302 Md. 47, 69, 485 A.2d 663, 674 (1984). "A broader right to interfere with economic relations exists" under the second scenario, "where no contract or a contract terminable at will is involved." *Id.* at 69–70, 485 A.2d at 674.

The distinction is that, where there is an existing contract, "inducing its breach, even for competitive purposes, is itself improper and, consequently, not 'just cause' for damaging another in his or her business." *Macklin,* 334 Md. at 303, 639 A.2d at 120. In contrast, where there is no existing contract, or the existing contract is "terminable at will by the party who refuses to continue performance," *id.* at 304, 639 A.2d at 120, "there is no legal assurance of future performance; thus a competitor who intentionally causes a third person not to continue an existing contract terminable at will does not improperly interfere with the contractual relation if no wrongful means are employed." *Id.* at 305, 639 A.2d at 121.

In *Fowler v. Printers II, Inc.,* 89 Md. App. 448, 466, 598 A.2d 794, 802 (1991), *cert. denied,* 325 Md. 619, 602 A.2d 710 (1992), the Maryland Court of Special Appeals articulated five elements of the first manifestation of the tort:

> (1) existence of a contract between plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional interference with that contract; (4) breach of that contract by the third party; and (5) resulting damages to the plaintiff.

Plaintiff has alleged the requisite elements. Intent need not be proven at this juncture. Ultimately, it can be proven "by showing that the defendant intentionally induced the breach or termination of the contract in order to harm the plaintiff or to benefit the defendant at the expense of the plaintiff." *Macklin,* 334 Md. at 301, 639 A.2d at 119.

Coldwell does not expressly state whether Peach and the other managers and agents involved in the alleged scheme were at will employees of Coldwell Banker. However, PenFed

asserts that Peach was an at will employee.  ECF 26 at 9–10.  But, for purposes of determining whether plaintiff's proposed FAC is futile, the Court will assume the truth of the facts in the FAC and the Complaint.  *See Fid. & Guar. Life Ins. Co. v. United Advisory Grp., Inc.*, WDQ-13-0040, 2014 WL 346630, at *6 n.28 (D. Md. Jan. 29, 2014) (assuming "the truth of the [plaintiff's] allegations" for purposes of futility analysis); *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012) (explaining that when analyzing futility, the court will "accept as true all non-conclusory factual allegations [in the complaint and amended complaint], and draw all reasonable inferences in plaintiff's favor to determine whether the allegations plausibly give rise to an entitlement to relief"); *see also Beckman v. Montgomery Cnty. Hous. Opportunities Comm'n*, TJS-16-4090, 2019 WL 13254576, at *3 (D. Md. Feb. 1, 2019) (determining that an amended claim was futile, "[e]ven assuming the truth of [plaintiff's] allegation").

Under Maryland law, "[g]enerally, an employer or an employee may terminate an at-will employment relationship, for almost any reason or no reason, at any time," so long as the termination is not for an illegal reason.  *Bagwell v. Peninsula Reg'l Med. Ctr.*, 106 Md. App. 470, 490, 665 A.2d 297, 307 (1995) (Hollander, J.); *see Molesworth v. Brandon*, 341 Md. 621, 629, 672 A.2d 608, 612 (1996) (describing legislatively "'engrafted exceptions'" to at will employment, such as statutes that make it unlawful for an employer to terminate an employee on the basis of a protected status) (quoting *Adler v. American Standard Corp.,* 291 Md. 31, 35, 432 A.2d 464, 467 (1981).  It is well settled in Maryland that an at will employee may pursue a claim for wrongful discharge if the termination violates a "clear mandate of public policy . . . ."  *Adler,* 291 Md. at 43, 432 A.2d at 471; *see Samuels v. Tschechtelin*, 135 Md. App. 483, 526, 763 A.2d 209, 232 (2000) (Hollander, J.); *see, e.g., Molesworth*, 341 Md. at 628, 632, 637, 672 A.2d at 612–13, 616 (stating

that, in view of Maryland's public policy against sex discrimination, plaintiff, an at will employee, could lodge a common law claim for wrongful discharge based on sex discrimination).

Of import, Peach's 2013 employment agreement is appended to the suit as an exhibit and may be considered here. It provides that Peach could terminate his employment "upon two weeks' written notice to the Company at any time with or without cause[.]" ECF 1-1 at 4. Additionally, "upon notice" to Peach, Coldwell Banker could terminate him "at any time with or without cause." *Id.* Therefore, based on plaintiff's own filings, it appears that Peach was an at will employee.

However, in each of the three Peach Agreements, there is a "Survival" clause. Each one specifies that Peach's obligations, including those of non-solicitation, non-competition, non-interference, non-hire, non-disparagement, and protection of trade secrets and confidential information, "shall survive following termination with or without cause[.]" ECF 1-1 at 6; ECF 1-2 at 8 (same); ECF 1-3 at 9 ("The restrictive covenants in this Agreement will apply and be valid notwithstanding . . . the termination of [Peach's] employment with the Company irrespective of which party terminates the relationship or why.")

As the *Macklin* Court explained, 334 Md. at 305, 639 A.2d at 121, if an interferer induces a "third person not to continue an existing [at will] contract", the interferer has *not* engaged in tortious interference with a contract. However, that is not the picture Coldwell Banker paints. Coldwell alleges that Peach and other managers breached their restrictive covenants with plaintiff regarding obligations that continued after termination. *See, e.g.,* ECF 25-3 at 3 (Coldwell claiming that PenFed has engaged in a "scheme" "of unfair competition" where PenFed has "hire[d] a number of Coldwell Banker's employees—despite their restrictive covenants barring them from performing the roles given to them by PenFed"). It is interference with those contractual obligations that are at the heart of plaintiff's Complaint.

Coldwell Banker's claim of tortious interference with contract is clearly not futile. Coldwell alleges that it had business and contractual relationships with Peach and others through employment and shareholder agreements that contained restrictive covenants. *Id.* at 10, 46–47. Coldwell also claims PenFed *knew* that Peach and other former Coldwell employees managers were in breach of their contractual obligations to plaintiff in their respective roles at PenFed. *Id.* at 30, 48–49.

PenFed argues that "Coldwell has failed to identify any independent wrongful or unlawful act separate from the effect on Coldwell's business relationships." ECF 26 at 10. Moreover, PenFed claims that the "impact" on Coldwell Banker's business does not "amount to anything more than '[legitimate] commercial competition.'" *Id.* (alteration in original) (quoting *US Wind Inc. v. InterMoor, Inc.*, 640 F. Supp. 3d 390, 419 (D. Md. 2022)). But, as the *Fowler* Court established, 89 Md. App. at 469, 598 A.2d at 804, "the central question is whether, upon learning of the restrictive covenant that binds its new employee, the new employer nevertheless 'engages the employee to work for him in an activity that would mean violation of the contract not to compete.'" *Id.* (citation omitted). That is what Coldwell Banker alleges.

Tortious interference with business relations is the "broader form of the tort[.]" *Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc.*, 336 Md. 635, 652, 650 A.2d 260, 268 (1994). The canonical formulation of the elements of the second manifestation of the tort was reiterated by the Maryland Court of Appeals in *Natural Design,* 302 Md. at 71, 485 A.2d at 675 (citations omitted):

> (1) intentional and wilful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting.

Notably, liability will only attach to an interference that is either "wrongful or unlawful." *Travelers Indem. Co. v. Merling*, 326 Md. 329, 343, 605 A.2d 83, 90 (1992) (citation omitted); *see Gabaldoni v. Wash. Cnty. Hosp. Ass'n.*, 250 F.3d 255, 263 (4th Cir. 2001) (citing *Travelers*, 326 Md. at 343, 605 A.2d at 90).

Coldwell Banker alleges that PenFed is using former Coldwell Banker managers, including Peach, to solicit its real estate agents, spread false information about Coldwell, and encourage homesellers who have listings with Coldwell Banker to move their business to PenFed. *See* ECF 25-3 at 30–34, 42, 51–52. As mentioned, intent "'can rarely be established by direct evidence, and must often be proved circumstantially and by inference.'" *Laws v. Thompson,* 78 Md. App. 665, 678, 554 A.2d 1264, 1271 (1989) (citation omitted), *cert. denied,* 316 Md. 428, 559 A.2d 791 (1989). Coldwell Banker's claim of tortious interference is not so insufficient on its face as to be deemed futile.

Plaintiff also alleges that Peach and PenFed "both committed unfair competition against Coldwell Banker." ECF 25-3 at 51. As to Coldwell's claim of Unfair Competition (Count 4), PenFed argues that this claim is also futile. ECF 26 at 12. PenFed contends that "the FAC merely includes allegations that PenFed and Coldwell are engaged in garden-variety commercial competition." *Id.*

Maryland's common law tort of unfair competition extends to "'all cases . . . in the field of business.'" *Electronics Store, Inc. v. Cellco Partnership,* 127 Md. App. 385, 407, 732 A.2d 980, 991 (1999) (quoting *Baltimore Bedding Corp. v. Moses,* 182 Md. 229, 236, 34 A.2d 338, 342 (1943)). In general, "[u]nfair competition is 'damaging or jeopardizing another's business by fraud, deceit, trickery or unfair methods of any sort.'" *Thompson v. UBS Financial Services, Inc.*,

443 Md. 47, 60, 115 A.3d 125, 133 (2015) (quoting *Baltimore Bedding Corp.*, 182 Md. at 237, 34 A.2d at 342) (internal quotation marks omitted).

As Judge Blake noted in *Delmarva*, 218 F. Supp. 2d at 733, the Maryland Court of Appeals "has preserved a high degree of flexibility in the law of unfair competition[.]"  She reiterated, *id.* (quoting *Baltimore Bedding Corp.*, 182 Md. at 237, 34 A.2d at 342): "What constitutes unfair competition in a given case is governed by its own particular facts and circumstances. Each case is a law unto itself, subject, only, to the general principle that all dealings must be done on the basis of common honesty and fairness, without taint of fraud or deception."

"'The legal principles which are controlling here are simply the principles of old-fashioned honesty.  One [person] may not reap where another has sown, nor gather where another has strewn.'"  *GAI Audio*, 27 Md. App. at 192, 340 A.2d at 748 (citation omitted). Therefore, "in cases of unfair competition, fraudulent intent is not essential[.]"  *Edmondson Village Theatre*, 208 Md. at 46, 116 A.2d at 381.  On the other hand, and as PenFed points out (ECF 26 at 11), Maryland courts have said that "unfair competition is not a 'fallback' tort that can save [a plaintiff] from its failure to establish tortious interference . . . . "  *Command Tech., Inc. v. Lockheed Martin Corp.*, No. 0469, Sept. Term 2014, 2015 WL 6470277, at *8 (Md. Ct. Spec. App. Oct. 27, 2015).

With respect to Peach, Coldwell Banker reiterates its allegations regarding his breach of contract (Count 1) and breach of fiduciary duty (Count 2).  ECF 25-3 at 51.  Plaintiff specifically alleges that along with breaching "his non-competition and non-disclosure restrictive covenants", Peach "wrongly misappropriated confidential information belonging to Coldwell Banker" and "obfuscated his true job duties and job location" from the plaintiff.  *Id.*

As to PenFed, Coldwell Banker reiterates the allegations of misconduct that supported its claim for tortious interference.  It asserts that PenFed "poached [its] employees" and "used those

23

former employees to directly or indirectly solicit and recruit Coldwell Banker agents and induce them to terminate their ICAs and disassociate from Coldwell Banker and associate with PenFed[.]" *Id.* at 51–52.  Further, plaintiff claims that PenFed has poached agents "to force Coldwell Banker to give up rights under listing agreements with customers under duress[.]"  *Id.* at 52.  Additionally, Coldwell Banker asserts that PenFed "spread misrepresentations about Coldwell Banker to those agents PenFed is recruiting away[.]"  *Id*.  And, plaintiff asserts that "PenFed . . . helped obfuscate and conceal Peach's true job duties and locations from Coldwell Banker."  *Id.*

As stated, there is a "high degree of flexibility" in regard to the claim of unfair competition. *Delmarva*, 218 F. Supp. 2d at 733.  The behavior that Coldwell Banker ascribes to PenFed includes poaching of Coldwell Banker employees, including Peach, and dissemination of misinformation about plaintiff.  These claims fall into the web of dishonest business practices that the tort of unfair competition is designed to address.  Similarly, the behavior that Coldwell Banker ascribes to Peach, including misappropriating confidential information and hiding the details of Peach's employment by PenFed, is sufficient to fall under the umbrella of unfair competition.  Clearly, this claim is not futile.

In sum, there is no basis to deny the Motion on the ground of futility.

Moreover, defendants cannot seriously claim that they are prejudiced by the amendment. Approximately six months have passed since plaintiff filed suit.  *See* ECF 1.  After suit was filed, the defendants moved to dismiss and briefing ensued.  *See* ECF 13, ECF 17, ECF 20, ECF 23, ECF 24.  The Court has not yet issued a scheduling order for this case because of the pendency of the motions to dismiss.  But, of their own accord, the parties began the discovery process.  Plaintiff now seeks to add additional facts to the FAC and has revised two legal claims.  This is hardly

unusual. Moreover, the case has not progressed to the point where it would be prejudicial to defendants to allow plaintiff to do so.

Of significance, the FAC does not materially alter the underlying factual allegations in the Complaint. In its Opposition, PenFed concedes as much, stating: "The factual allegations concerning Peach's employment, his departure, and the departure of other ex-Coldwell real-estate agents are mostly repeated in the proposed First Amended Complaint[.]" ECF 26 at 2 n.1. Indeed, the amendment of the facts is in response to defendants' criticisms of the alleged deficiencies in the Complaint. Plaintiff also adds general background information about the competitive nature of the real estate business, which provides useful context for its claims. ECF 25-3 at 9–10.

Nor has plaintiff made significant changes to the causes of action for breach of contract against Peach (FAC Count 1) or the tortious interference claim against PenFed (FAC Count 3). As to these claims, plaintiff merely includes additional factual details and legal authority. Plaintiff also abandoned the claim of civil conspiracy. There can be no complaint about that course of action.

The plaintiff has, as noted, added two new claims. In particular, plaintiff has added a claim against Peach for breach of fiduciary duty (FAC Count 2). *Id.* at 43–44. And, plaintiff has added an unfair competition claim against both defendants (FAC Count 4). *Id.* at 50–53. "If the opposing party 'has notice of the events giving rise to the action at the outset,' then amendments 'under the same theory of the case' should be allowed, even if they 'add[] an additional theory of recovery to the facts already pled.'" *Ramnarine*, 2018 WL 2762564, at *2 (cleaned up) (alteration in original).

With respect to the breach of fiduciary duty claim, the facts on which plaintiff relies to make this claim are similar to the factual allegations that were made in the original Complaint. Plaintiff alleges that Peach committed "unfair or otherwise wrongful acts during his employment

with Coldwell Banker." ECF 25-3 at 43. Further, plaintiff claims that "Peach misused and/or misappropriated Coldwell Banker's confidential information." *Id.*

Similarly, as to the unfair competition claim, plaintiff's factual predicate is quite similar to the factual predicate for the now abandoned civil conspiracy claim. In the original Complaint, plaintiff alleged that defendants had collaborated in a civil conspiracy "to, among other things, unfairly compete with Coldwell Banker and take away agents and employees of Coldwell Banker[.]" ECF 1 at 34. In the unfair competition claim added to the FAC, plaintiff alleges that both defendants "committed unfair competition against Coldwell Banker." ECF 25-3 at 51.

The facts on which plaintiff relies in support of its new cause of action are not far afield from those referenced in its civil conspiracy claim. But, plaintiff provides more thorough examples of how defendants' alleged activity "proximately caused . . . irreparable harm" and "net lost profits", such as "out-of-pocket damages" incurred to buttress Coldwell Banker's "retention efforts[.]" *Id.* at 53. In its Opposition, PenFed concedes that "[t]he unfair competition claim against PenFed is grounded on the same contentions that constitute Coldwell's tortious interference claim." ECF 26 at 10. Therefore, there is no prejudice to the defendants by allowing the plaintiff to use facts asserted previously to add a new legal theory.

Moreover, there is no showing that the plaintiff has acted in bad faith. In several parts of the FAC, plaintiff supplements its allegations with information that it has also shared with defendants during discovery. *See, e.g.,* ECF 25-3 at 30 n.68 (explaining that the "names of the former Coldwell Banker managers were provided to PenFed and Peach via discovery served after the action was commenced"). Additionally, as discussed, the FAC addresses many of the deficiencies defendants raised in their respective motions to dismiss. This is the type of responsive lawyering that makes cases move more efficiently.

26

Curiously, PenFed complains that "the parties (and the Court) have been forced to expend time and resources in preparing (and considering) unnecessary filings that could have been avoided had Coldwell [Banker] simply filed an Amended Complaint as a matter of right."  ECF 26 at 4. This argument is not persuasive.  As I see it, it is the defense that has caused the Court to expend time and resources by opposing a routine motion to amend the suit.

### IV.    Conclusion

Plaintiff has moved to amend its Complaint early in the litigation.   The proposed amendments do not significantly alter the facts, and the proposed changes to the legal claims are not prejudicial, futile, or made in bad faith.  Therefore, I shall grant the Motion.

Because the FAC is now the operative pleading, the defendants' respective motions to dismiss are rendered moot. This is because an amended pleading replaces and supersedes the original pleading, to which the motions to dismiss were directed. *See*, *e.g.*, *Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021); *Young v. City of Mount Ranier*, 238 F.3d 567, 573 (4th Cir. 2001). Therefore, I shall deny both motions to dismiss (ECF 13, ECF 17), as moot, and without prejudice to the right of defendants to renew the motions, directed to the FAC.[5]

An Order follows.

Date:   October 10, 2025                                    _____/s/_____

                                                           Ellen Lipton Hollander
                                                           United States District Judge

---

[5] I have, of course, granted defendants the right to renew the motions to dismiss as to the FAC.  But, given my ruling as to futility, the Court does not expect defendants to relitigate any contentions that are addressed here.